IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | |
| Plaintiff, | Civil Action No.: 1:23-cv-440 |
| v. | |
| DOMINION MECHANICAL CONTRACTORS, INC., WILLIAM J. MCATEER, CARRIE A. MCATEER, DOUGLAS C. SEAL, and HEIDI S. SEAL, | |
| Defendants. | |

## COMPLAINT

HARTFORD FIRE INSURANCE COMPANY ("Hartford") files its Complaint against the Defendants, respectfully showing the Court as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.     Hartford is a Connecticut corporation and maintains its principal place of business in Hartford, Connecticut. Hartford is authorized to conduct business in Virginia.

2.     Dominion Mechanical Contractors, Inc. ("Dominion") is a citizen of Virginia, being an inactive Virginia corporation, with its principal place of business last reported at 12329 Braddock Road, Fairfax, VA 22030, which is in the Eastern District of Virginia, Alexandria Division.

3.     Dominion is subject to the jurisdiction of this Court.

4.     Dominion's former Registered Agent, CT Corporation System, resigned its status as of November 7, 2021, and Dominion has failed to appoint a replacement Registered Agent.

5.    Therefore, service upon the clerk of the State Corporation Commission is proper under VA Code § 12.1-19.1 and VA Code § 13.1-637(B) is authorized and proper.

6.    William J. McAteer is a citizen of Virginia believed to be residing at 12237 Rochester Drive, Fairfax, VA 22030, which is in the Eastern District of Virginia, Alexandria Division.

7.    Carrie A. McAteer is a citizen of Virginia believed to be residing at 12237 Rochester Drive, Fairfax, VA 22030, which is in the Eastern District of Virginia, Alexandria Division.

8.    Douglas C. Seal is a citizen of Virginia believed to be residing at 120 Forgotten Creek Lane, Amissville, VA 20106, which is in the Western District of Virginia, Charlottesville Division.

9.    Heidi S. Seal is a citizen of Virginia believed to be residing at 120 Forgotten Creek Lane, Amissville, VA 20106, which is in the Western District of Virginia, Charlottesville Division.

10.   All of the Defendants in this action are collectively referred to herein at times as the "Indemnitors."

11.   Jurisdiction is proper under 28 U.S.C. § 1332(a) because: (i) the matter in controversy exceeds $75,000.00, exclusive of attorneys' fees incurred in this action, plus interest and costs; (ii) complete diversity of citizenship exists between Hartford and the Defendants.

12.   Venue in this district is proper under 28 U.S.C. § 1391(b) because: (i) the Defendants reside within the District and Division of this Court and/or are jointly and severally liable with Defendants who reside within this District and Division; and/or (ii) some or all of the actions and/or inactions giving rise to the losses/damages at issue occurred within the District and Division over which this Court presides.

## FACTS

**A.  The Indemnity Agreement**

13.     Hartford is engaged in the business of, among other things, underwriting surety bonds for the construction industry.

14.     Hartford issued performance and payment bonds to Dominion.

15.     As a condition of issuing these bonds, Hartford required each of the Indemnitors execute a General Indemnity Agreement ("Indemnity Agreement") in its favor. A copy of the Indemnity Agreement is attached to this Complaint as Exhibit "A."

16.     William A. McAteer executed the Indemnity Agreement both in his individual capacity as well as the authorized officer of Dominion. *See* Indemnity Agreement, attached as Exhibit "A."

17.     Carrie A. McAteer executed the Indemnity Agreement in her individual capacity. *See* Indemnity Agreement, attached as Exhibit "A."

18.     Douglas C. Seal executed the Indemnity Agreement in his individual capacity. *See* Indemnity Agreement, attached as Exhibit "A."

19.     Heidi S. Seal executed the Indemnity Agreement in her individual capacity. *See* Indemnity Agreement, attached as Exhibit "A."

20.     According to the Indemnity Agreement, the Indemnitors agreed that, among other things, they would:

> indemnify, exonerate and hold Hartford harmless from and against all Loss, claims, demands, liabilities, suits and causes of action which are in any way related to any Underwriting activities, Bonds or this Agreement. Indemnitors shall immediately notify Hartford in writing of any demand, notice, suit, claim, action or proceeding relating to any Bond. Hartford may bring separate suits on this Agreement as causes of action accrue, and the bringing of such suit or suits or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of additional suits

or causes of actions. Confirmation of payments through Hartford's electronic claim system, copies of releases, or other evidence of such payments which are maintained by Hartford in the ordinary course of business shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to Hartford.

*See* Paragraph 5.  "Indemnity and Exoneration" on pg. 5 of Indemnity Agreement, Exhibit "A."

21.     According to the Indemnity Agreement:

Upon Default, Hartford shall have the absolute right to take any or all of the following actions:
    (a) Assert, enforce, and use all the assigned, transferred or conveyed rights;
    (b) Take possession of all or any part of the work under any or all contracts relating to or for which a Bond has been Underwritten;
    (c) Take possession of all tools, plant, machinery, equipment, office equipment, Books and Records, hardware, software, stored data, materials, supplies, inventory, work in process and completed assemblies, wherever located;
    (d) Execute any document in the name of any Indemnitor necessary to effectuate the purposes and terms of this Agreement or enforce any common law rights;
    (e) Take such other action and enforce such other rights permitted by this Agreement, at law or otherwise.

*See* Paragraph 10.  "Default" on pg. 6 of Indemnity Agreement, Exhibit "A."

22.     The Indemnity Agreement defines "Default" to include any one or more of the

following:

        i) an Indemnitor's breach, abandonment, failure, refusal or inability to timely perform, in whole or in part, any contract for which a Bond has been Underwritten;
        ii) an Indemnitor's failure, refusal or inability to timely satisfy any debt or obligation incurred as part of any contract for which a Bond has been Underwritten;
        iii) an Indemnitor' s failure, refusal or inability to timely satisfy any term or condition of any Bond, any contract for which a Bond has been Underwritten or this Agreement;
        iv) an Indemnitor's use of contract funds in any manner which is inconsistent with any obligation for which a Bond has been Underwritten or the requirements of this Agreement;
        v) a declaration of default, a demand for Hartford to pay or perform, or a termination for default asserted by an obligee relating to any contract for which a Bond has been Underwritten;

vi) a dissipation or diversion of assets by any Indemnitor which impairs the performance of any term or condition of this Agreement or any contract for which a Bond has been Underwritten or any Bond;

vii) an Indemnitor's becoming insolvent or the voluntary or involuntary commencement of any proceeding by or against the Principal on the basis of its actual or perceived insolvency, including, without limitation, the appointment of a receiver or trustee, reorganization, liquidation or any similar proceeding;

viii) the commencement or continuation of any proceeding which deprives or interferes with the Principal's performance of any obligation for which a Bond has been Underwritten or its use of any supplies, tools, plant, machinery, equipment, wherever located, or the work under any contract for which a Bond has been Underwritten;

ix) the death, disappearance, adjudged incompetence, incarceration, commitment or felony conviction of any Principal;

x) any material change in the character, financial condition, identity, control, management, beneficial ownership or existence of any Principal;

xi) an Indemnitor's providing, directly or indirectly, any false or materially misleading statement, document or disclosure to Hartford, or an Indemnitor's failure to fully and timely disclose material information bearing upon either its ability to perform any obligation for which a Bond has been issued or under this Agreement.

*See* Paragraph 1(b). "Default" on pg. 3 of Indemnity Agreement, Exhibit "A."

23.     Hartford relied on the Indemnity Agreement and the Indemnitors' promises as stated therein in issuing payment and performance bonds to Dominion.

**B. The Bonded Projects**

<u>University of Maryland-Brendan Uribe</u>

24.     At the Indemnitors' request, Hartford issued a performance and payment bonds #42 BCS HN9390 ("UMD Bonds") wherein Dominion was a subcontractor to Whiting-Turner Contracting Co. ("Whiting-Turner") for a project known as University of Maryland-Brendan Uribe, Contract No. 015610.001-23A (the "UMD Project"). A copy of the UMD Bonds are attached hereto as Exhibit "B."

25.     On September 25, 2019, Whiting-Turning issued a Notice of Default to Dominion regarding the UMD Project.

26.     Whiting-Turner's Notice of Default to Dominion alleged that Dominion failed to provide adequate forces to complete the UMD Project and failed to pay subcontractors and suppliers.

27.     On October 7, 2019, Dominion issued a Letter of Direction, dated October 3, 2019, to Whiting-Turner ("UMD Letter of Direction") irrevocably instructing Whiting Turner to make payments under the contract to Hartford. A copy of Dominion's UMD Letter of Direction is attached hereto as Exhibit "C."

28.     On October 7, 2019, Dominion issued a Notice of Voluntary Default, dated October 4, 2019, to Hartford ("UMD Dated Notice of Voluntary Default"). A copy of Dominion's UMD Dated Notice of Voluntary Default is attached hereto as Exhibit "D."

29.     The UMD Dated Notice of Voluntary Default is addressed to Whiting-Turner but was issued to Hartford at Hartford's request.

30.     After receiving the UMD Dated Notice of Voluntary Default, Hartford held and reserved all rights to transmit the letter to Whiting-Turner.

31.     On December 23, 2019, Dominion issued an undated Notice of Voluntary Default, to Hartford ("UMD Undated Notice of Voluntary Default") at Hartford's request. A copy of Dominion's UMD Undated Notice of Voluntary Default is attached hereto as Exhibit "E."

32.     Other than the date, the UMD Notices of Voluntary Default, both Dated and Undated, are in the same form and contain the same content.

33.     Dominion's UMD Notices of Voluntary Default acknowledged Dominion's inability to pay for the completion of or perform its obligations because of financial difficulties.

34.     Dominion's UMD Notices of Voluntary Default further instructed Whiting-Turner to call upon Hartford to arrange for the completion of Dominion's performance of Dominion's obligations on the UMD Project, irrevocably directing Whiting-Turner to pay Hartford the remaining contract funds.

35.     Hartford arranged for the completion of Dominion's performance obligations on the UMD Project through Poole & Kent Corporation.

36.     Even accounting for Hartford's receipt of remaining contract funds from Whiting-Turner, Hartford incurred a loss completing Dominion's performance obligations.

37.     Hartford also satisfied several claims on the UMD Payment Bond arising from Dominion's admitted failure to pay its subcontractors and suppliers.

38.     To date, Hartford has incurred a net loss of $797,672.20 in satisfying Dominion's performance and payment obligations on the UMD Project.

<u>Herndon Station Metro Garage</u>

39.     At the Indemnitors' request, Hartford issued a performance and payment bonds #42 BCS HK8661 ("Herndon Garage Bonds") wherein Dominion was a subcontractor to Manhattan Construction Co. ("Manhattan") for a project known as Herndon Station Metro Garage, Contract No. 200.2300.230010 (the "Herndon Garage Project"). A copy of the Herndon Garage Bonds are attached hereto as Exhibit "F."

40.     On October 7, 2019, Dominion issued a Letter of Direction, dated October 3, 2019, to Manhattan ("Herndon Garage Letter of Direction") irrevocably instructing Manhattan to make payments under the contract to Hartford. A copy of Dominion's Herndon Garage Letter of Direction is attached hereto as Exhibit "G."

41.     On October 7, 2019, Dominion issued a Notice of Voluntary Default, dated October 4, 2019, to Hartford ("Herndon Garage Dated Notice of Voluntary Default"). A copy of Dominion's Herndon Garage Dated Notice of Voluntary Default is attached hereto as Exhibit "H."

42.     The Herndon Garage Dated Notice of Voluntary Default is addressed to Manhattan but was issued to Hartford at Hartford's request.

43.     After receiving the Herndon Garage Dated Notice of Voluntary Default, Hartford held and reserved all rights to transmit the letter to Manhattan.

44.     On December 23, 2019, Dominion issued an undated Herndon Garage Notice of Voluntary Default, to Hartford ("Herndon Garage Undated Notice of Voluntary Default") at Hartford's request. A copy of Dominion's Herndon Garage Undated Notice of Voluntary Default is attached hereto as Exhibit "I."

45.     Other than the date, the Herndon Garage Notices of Voluntary Default, both dated and undated, are in the same form and contain the same content.

46.     Dominion's Herndon Garage Notices of Voluntary Default acknowledged Dominion's inability to pay for the completion of or perform its obligations because of financial difficulties.

47.     Dominion's Herndon Garage Notices of Voluntary Default further instructed Manhattan to call upon Hartford to arrange for the completion of Dominion's performance of Dominion's obligations on the Herndon Garage Project, irrevocably directing Manhattan to pay Hartford the remaining contract funds.

48.     Hartford arranged for the completion of Dominion's performance obligations on the Herndon Garage Project.

49.     Even accounting for Hartford's receipt of remaining contract funds from Manhattan, Hartford incurred a loss completing Dominion's performance obligations.

50.     To date, Hartford has incurred a net loss of $4,573.82 in satisfying Dominion's performance and payment obligations on the Herndon Garage Project.

<u>2345 Innovation Center Drive</u>

51.     At the Indemnitors' request, Hartford issued a performance and payment bonds #42 BCS HQ2328 ("2345 Innovation Center Bonds") wherein Dominion was a subcontractor to Manhattan Construction Co. ("Manhattan") for a project known as 2345 Innovation Center Drive, Contract No. 200.2300.23001 (the "2345 Innovation Center Project"). A copy of the 2345 Innovation Center Bonds are attached hereto as Exhibit "J."

52.     On October 7, 2019, Dominion issued a Letter of Direction, dated October 3, 2019, to Manhattan ("2345 Innovation Center Letter of Direction") irrevocably instructing Manhattan to make payments under the contract to Hartford. A copy of Dominion's 2345 Innovation Center Letter of Direction is attached hereto as Exhibit "K."

53.     On October 7, 2019, Dominion issued a Notice of Voluntary Default, dated October 4, 2019, to Hartford ("2345 Innovation Center Dated Notice of Voluntary Default"). A copy of Dominion's 2345 Innovation Center Dated Notice of Voluntary Default is attached hereto as Exhibit "L."

54.     The 2345 Innovation Center Dated Notice of Voluntary Default is addressed to Manhattan but was issued to Hartford at Hartford's request.

55.     After receiving the 2345 Innovation Center Dated Notice of Voluntary Default, Hartford held and reserved all rights to transmit the letter to Manhattan.

56.     On December 23, 2019, Dominion issued an undated 2345 Innovation Center Notice of Voluntary Default, to Hartford ("2345 Innovation Center Undated Notice of Voluntary Default") at Hartford's request. A copy of Dominion's 2345 Innovation Center Undated Notice of Voluntary Default is attached hereto as Exhibit "M."

57.     Other than the date, the 2345 Innovation Center Notices of Voluntary Default, both dated and undated, are in the same form and contain the same content.

58.     Dominion's 2345 Innovation Center Notices of Voluntary Default acknowledged Dominion's inability to pay for the completion of or perform its obligations because of financial difficulties.

59.     Dominion's 2345 Innovation Center Notices of Voluntary Default further instructed Manhattan to call upon Hartford to arrange for the completion of Dominion's performance of Dominion's obligations on the 2345 Innovation Center Project, irrevocably directing Manhattan to pay Hartford the remaining contract funds.

60.     Hartford arranged for the completion of Dominion's performance obligations on the 2345 Innovation Center Project through Poole and Kent Metro Test & Balance, Inc.

61.     Even accounting for Hartford's receipt of remaining contract funds from Manhattan, Hartford incurred a loss completing Dominion's performance obligations.

62.     Hartford also satisfied several claims on the 2345 Innovation Center Payment Bond arising from Dominion's admitted failure to pay its subcontractors and suppliers.

63.     To date, Hartford has incurred a net loss of $460,746.43 in satisfying Dominion's performance and payment obligations on the 2345 Innovation Center Project.

<u>2461 Eisenhower Ave., Carlyle, Alexandria VA</u>

64.     At the Indemnitors' request, Hartford issued a performance and payment bonds #42 BCS HN9398 ("2461 Eisenhower Bonds") wherein Dominion was a subcontractor to Northpoint Construction Services, LLC ("Northpoint") for a project known as 2461 Eisenhower Ave., Carlyle, Contract No. 160113 (the "2461 Eisenhower Ave., Carlyle Project"). A copy of the 2461 Eisenhower Ave., Carlyle Bonds are attached hereto as Exhibit "N."

65.     On October 7, 2019, Dominion issued a Letter of Direction, dated October 3, 2019, to Northpoint ("2461 Eisenhower Ave., Carlyle Letter of Direction") irrevocably instructing Northpoint to make payments under the contract to Hartford. A copy of Dominion's 2461 Eisenhower Ave., Carlyle Letter of Direction is attached hereto as Exhibit "O."

66.     On October 7, 2019, Dominion issued a Notice of Voluntary Default, dated October 4, 2019, to Hartford ("2461 Eisenhower Ave., Carlyle Dated Notice of Voluntary Default"). A copy of Dominion's 2461 Eisenhower Ave., Carlyle Dated Notice of Voluntary Default is attached hereto as Exhibit "P."

67.     The 2461 Eisenhower Ave., Carlyle Dated Notice of Voluntary Default is addressed to Northpoint but was issued to Hartford at Hartford's request.

68.     After receiving the 2461 Eisenhower Ave., Carlyle Dated Notice of Voluntary Default, Hartford held and reserved all rights to transmit the letter to Northpoint.

69.     On December 23, 2019, Dominion issued an undated 2461 Eisenhower Ave., Carlyle Notice of Voluntary Default, to Hartford ("2461 Eisenhower Ave., Carlyle Undated Notice of Voluntary Default") at Hartford's request. A copy of Dominion's 2461 Eisenhower Ave., Carlyle Undated Notice of Voluntary Default is attached hereto as Exhibit "Q."

70.     Other than the date, the 2461 Eisenhower Ave., Carlyle Notices of Voluntary Default, both dated and undated, are in the same form and contain the same content.

71.     Dominion's 2461 Eisenhower Ave., Carlyle Notices of Voluntary Default acknowledged Dominion's inability to pay for the completion of or perform its obligations because of financial difficulties.

72.     Dominion's 2461 Eisenhower Ave., Carlyle Notices of Voluntary Default further instructed Northpoint to call upon Hartford to arrange for the completion of Dominion's performance of Dominion's obligations on the 2461 Eisenhower Ave., Carlyle Project, irrevocably directing Northpoint to pay Hartford the remaining contract funds.

73.     Even accounting for Hartford's receipt of remaining contract funds from Northpoint, Hartford incurred a loss completing Dominion's performance obligations.

74.     Hartford satisfied several claims on the 2461 Eisenhower Ave., Carlyle Payment Bond arising from Dominion's admitted failure to pay its subcontractors and suppliers.

75.     Hartford has further incurred legal fees defending against claims on the 2461 Eisenhower Ave., Carlyle Payment Bond.

76.     To date, Hartford has incurred a net loss of $104,798.72 in satisfying Dominion's performance and payment obligations on the 2461 Eisenhower Ave., Carlyle Project.

**C. The Indemnity Demands**

77.     The UMD, Herndon Station Metro Garage, 2345 Innovation Center Drive, and 2461 Eisenhower Ave., Carlyle Bonds, are collectively referred to as, the "Bonds."

78.     The UMD, Herndon Station Metro Garage, 2345 Innovation Center Drive, and 2461 Eisenhower Ave., Carlyle Projects, are collectively referred to as, the "Bonded Projects."

79.     On October 2, 2019, Hartford filed the Indemnity Agreement as a UCC-1 Financing Statements, naming all Indemnitors as debtors. A copy of this UCC Filing is attached hereto as Exhibit "R."

80.     On May 26, 2021, Hartford issued correspondence to Indemnitors, under a full reservation of rights, summarizing Hartford's losses to date on the Bonded Projects and calling upon the Indemnitor's to satisfy their indemnity obligations. A copy of this letter is attached hereto as Exhibit "S."

81.     On August 13, 2021, Hartford issued correspondence to Indemnitors, under a full reservation of rights, requesting Dominion respond to Hartford's May 26, 2021, correspondence.

82.     The Indemnitors have not responded to Hartford's May 26, 2021, or August 13, 2021, correspondence.

83.     Hartford has also incurred consulting fees and expenses as part of its investigation and satisfaction of Dominion's defaults on the Bonded Projects.

84.     As of September 8, 2022, Hartford had incurred a total net loss of $1,367,791.17 in its investigation and satisfaction of Dominion's defaults on the Bonded Projects. A copy of confirmation of payments made through Hartford's electronic system and other evidence of such payments which are maintained by Hartford in the ordinary course of business is attached hereto as Exhibit "T."

85.     Pursuant to the terms of the Indemnity Agreement, Hartford is entitled to recover all of its aforesaid damages, as well as, prejudgment interest and the costs of this proceeding, including its reasonably incurred attorneys' fees and its other expenses from the Indemnitors.

86.     Hartford retained the undersigned attorneys and the firm of Watt, Tieder, Hoffar & Fitzgerald, LLP to represent it in this action and it is obligated to pay these attorneys a reasonable fee for their services rendered and costs incurred.

87.     All conditions precedent to maintaining this action have occurred, been excused, or have otherwise been waived.

## COUNT I
### (Breach of Indemnity Agreement against all Defendants)

88.     Hartford realleges and incorporates paragraphs 1 through 87 above, as though fully set forth herein.

89.     The Indemnitors executed a valid Indemnity Agreement, the purpose of which is to indemnify, exonerate, and hold Hartford harmless from any losses, costs, and expenses it may incur as a result of having issued the Bonds.

90.     Dominion issued Notices of Voluntary Default to Hartford on all Bonded Projects.

91.     Dominion's voluntary default required Hartford to satisfy Dominion's obligations under the Bonded Contracts and Hartford's obligations under the Bonds.

92.     Despite Hartford's demand for Indemnitors to satisfy their obligations, the Indemnitors failed and/or refused to satisfy their obligations to Hartford under the Indemnity Agreement.

93.     Hartford has performed its obligations and satisfied all conditions precedent to relief as required under the Indemnity Agreement.

94.     The Indemnitors have not exonerated or indemnified Hartford for any of its losses related to the Bonds.

95.     The Indemnitors have breached the terms of the Indemnity Agreement by failing and/or refusing to collateralize Hartford, and by failing to exonerate and indemnify Hartford from all losses, costs and expenses which have arisen by virtue of its having issued the Bonds.

96.     Pursuant to the Indemnity Agreement, Hartford is entitled to an award against each of the Indemnitors, jointly and severally, for the damages, prejudgment interest and the fees, costs, and expenses Hartford has or will incur in the pursuit of this action.

WHEREFORE, Hartford demands judgment against the Indemnitors, jointly and severally, for its damages, plus the attorneys', consultants', fees, costs, and/or expenses that Hartford has already incurred and those it will incur going forward in this action, together with pre-judgment interest, and such other and further relief as this Court deems just and proper.

**COUNT II**
**(Common law indemnity against Dominion)**

97.     Hartford realleges and incorporates paragraphs 1 through 87 above as though fully set forth herein.

98.     Dominion served as a subcontractor on the Bonded Projects.

99.     Dominion issued Notices of Voluntary Default on all Bonded Projects.

100.    Dominion's voluntary default required Hartford to satisfy Dominion's obligations under the Bonded Contracts and Hartford's obligations under the Bonds.

101.    Hartford's damages were the direct and proximate result of Dominion's defaults on the Bonded Projects.

102.    Hartford suffered its damages through no fault of its own and solely as a result of Dominion's failure to perform its obligations under the Bonded Contracts.

103.    In addition to recovery under breach of the indemnity agreement as pled in Count I, Hartford is also entitled to recover its damages from Dominion under common law indemnity.

WHEREFORE, Hartford demands judgment against Dominion, for its damages, the costs associated with the pursuit of this matter, attorneys' and consultants' fees, prejudgment interest and such other and further relief as this Court deems just and proper.

Respectfully submitted this 4th day of April 2023.

/s/ Dominick P. Weinkam
Dominick P. Weinkam (VA Bar No. 92595)
Watt, Tieder, Hoffar & Fitzgerald, LLP
1765 Greensboro Station Place, Suite 1000
McLean, VA 22102
Telephone: 703-749-1000
Facsimile: 703-893-8029
dweinkam@watttieder.com

*Attorneys for Plaintiff Hartford Fire Insurance Company*